# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GREAT PLAINS VENTURES,
INCORPORATED,

    Plaintiff,

v.

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.

Case No. 14-CV-1136-JAR

## MEMORANDUM AND ORDER

Plaintiff Great Plains Ventures, Incorporated ("GPV") brings this action to recover under an insurance policy issued by Liberty Mutual Fire Insurance Company ("Liberty Mutual"). This matter comes before the Court on GPV's Motion for Partial Summary Judgment (Doc. 104) on the issues of coverage and attorneys' fees. The matter is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants in part and denies in part GPV's motion for summary judgment.

## I.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[1] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] Where, as here, the moving party bears the burden of proof at trial, the moving party must submit evidence to establish the essential elements of its claim.[7] Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[10]

## II. Uncontroverted Facts

The following material facts are either uncontroverted, stipulated to for the purposes of summary judgment, or viewed in the light most favorable to Defendant.

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Ricks v. Xerox Corp.*, 877 F. Supp. 1468, 1474 (D. Kan. 1995) (citing Fed. R. Civ. P. 56(c)); *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011) (citing *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002)).

[8] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

**The Policy and Covered Property**

Plaintiff GPV is a holding company that has majority ownership in several manufacturing companies. Defendant Liberty Mutual issued policy of insurance number YU2-L4L-433977-032 ("Policy") to GPV providing coverage for loss or damage to GPV's covered buildings, personal property, business income, and extra expense, subject to the Policy terms. The Policy had effective dates from September 1, 2012 through September 1, 2013. The Covered Property consists of one office building and four warehouses. These buildings are located at: 3504 N. Great Plains (the "3504 Building"); 5200 E. 35th Street North (the "5200 Building"); 5201 E. 36th Street North (the "5201 Building"); 5252 E. 36th Street North (the "5252 Building"); and 5260 E. 36th Street North (the "5260 Building"), all in Wichita, Kansas (collectively, "Covered Property").

The 5201, 5252, and 5260 buildings all have low-pitched, standing seam metal roofs. The 5200 Building also has a low-pitched metal roof, but in 2012, a silicone-based coating was installed on that building's roof. The roof of the 3504 Building has a TPO membrane as well as a tower that is covered with a metal roof. Before issuing the Policy, Liberty Mutual inspected the roofs on the covered property on August 6, 2012, and found them to be in "overall good condition, with no unfavorable conditions observed."[11]

The Policy contains several clauses that are relevant to the scope of coverage. A section near the beginning of the document labeled "Insuring Agreement" states that "Subject to all the terms and conditions of this policy, **we** will pay for risks of direct physical loss or damage to **covered property** as a result of an **occurrence**, unless excluded."[12] An "**occurrence**" is defined

---

[11] Doc. 105 at 3.

[12] Doc. 105, Ex. A at 12. The bolded terms in the Policy are in the original and indicate terms that are further defined within the Policy.

3

as "all loss or damage attributable directly or indirectly to one (1) cause or series of similar causes." The Policy also includes a section labeled "Coverages," which describes coverage for certain types of covered property. In this section, the Policy states that "If coverage for **real property** is provided . . . we will pay for a **covered loss** to your **real property** at or within one-thousand (1,000) feet of a **covered location**." "**Covered loss**" is defined as "a loss to **covered property** at a **covered location** resulting from **a peril insured against**." "**Real property**" is defined as "buildings and any other structure, including: (1) Completed additions, extensions, permanent fittings or fixtures; (2) Machinery and equipment used to service the buildings; [and] (3) Yard fixtures." Hail is not an excluded cause of loss under the policy.

**The Storm and the Claim**

On May 19, 2013, a hail storm impacted the area in northeast Wichita in which the Covered Property is located. The hail caused damage to the siding and HVAC units of the Covered Property, and caused indentations to the roofs of the buildings. On May 21, 2013, GPV notified Liberty Mutual of the damage to the Covered Property resulting from the hail storm. Liberty Mutual retained NHI General Adjusters ("NHI") and Engineering Design & Technology ("ED&T") to assist with the investigation of GPV's claim.

Beginning on May 25, 2013, NHI conducted an inspection of the Covered Property on behalf of Liberty Mutual. Liberty Mutual sent GPV copies of NHI's appraisal of damage on August 1, 2013. The appraisal did not call for replacement of the metal seam roof panels on the 5201, 5252, or 5260 buildings. On August 27, 2013, engineer Kevin Kirchmer of ED&T inspected the roofs and examined the hail depressions under 10X magnification. Mr. Kirchmer submitted a report on behalf of ED&T to Liberty Mutual, dated September 11, 2013, that categorized the effects of hail to a metal roof as either functional, i.e. damage that reduces the

expected service life of the roof, or aesthetic.[13] The report concluded that the roofs on the 5201, 5252, and 5260 buildings did not show signs of "functional damage," but only "hail-caused indentations" that were "aesthetic in nature and [were] not visible from the ground level."[14] According to the report, these indentations did not compromise the roofs' expected service life and did not warrant repair. Liberty Mutual also retained engineer Chris Kneppers from Madsen, Kneppers & Associates, and mechanical engineer Frank Grate, to examine the metal seam roofs. Mr. Knepper and Mr. Grate each concluded that the hail indentations did not affect the functionality or service life of the roofs.

On October 14, 2013, Dustin Robertson, then a general adjuster of complex claims for Liberty Mutual, sent an email summarizing the distinctions between functional and aesthetic damage to Marque Peer, GPV's Vice President of Development. Mr. Robertson explained that "minor impact damage or blemishes" to the roofs "would not be included in our scope of damage."[15] On December 12, 2013, Liberty Mutual sent GPV a letter offering to pay $611,883.51 as advance and partial payment for GPV's claim. Mr. Peer sent a letter on behalf of GPV to Liberty Mutual on January 13, 2014, with a Sworn Statement in Proof of Loss that claimed $4,393,135.42 in damage to the Covered Property, including damage to the roofs of the 5201, 5252, and 5260 buildings. GPV supported its claim for damage to the roofs with estimates from Bill Johnson of Evans Building Company, who recommended overlaying the roofs rather than fully replacing them. Mr. Johnson testified in his deposition that he based this recommendation on an inspection of GPV's roofs, during which he found indications that the hail indentations had caused physical damage to the roofs.

---

[13] Doc. 105-6 at 48.

[14] *Id.*

[15] *Id.* at 38.

Liberty Mutual responded with a letter on February 17, 2014, stating that it disagreed with GPV's claimed loss of $4,393,135.42 and that "[t]he policy does not provide coverage for the amount sought."[16] Liberty Mutual ultimately paid GPV $611,883.51 as partial payment for damage to walls, doors, the rooftop tower of the 3504 Building, the metal roof of the 5200 Building, a gazebo, and repair to HVAC units on the Covered Property. This amount did not reflect compensation for repair of the roofs on the 5201, 5252, or 5260 buildings.[17] Liberty Mutual requested that the parties submit the dispute concerning coverage of the metal seam roofs to appraisal. GPV declined to submit the dispute for appraisal and filed suit.

## III. Discussion

### A. Scope of Policy Coverage

Plaintiff seeks declaratory relief limited to the question whether the Policy provides coverage for the hail indentations on the metal seam roofs of the 5201, 5252, and 5260 buildings. For purposes of its summary judgment motion, Plaintiff does not contend that the hail caused functional or structural damage to the roofs.[18] Instead, Plaintiff argues that the Policy provides coverage for the hail indentations regardless of whether the indentations caused functional or merely cosmetic damage.[19] Defendant does not dispute that the hail storm created cosmetic dents in the roofs of the Covered Property, but argues that the Policy is limited to hail indentations that impact the "roofs' usefulness or function for normal purposes."[20]

---

[16] Doc. 105, Ex. B at 87–89.

[17] Doc. 105, Ex. D at 93:20–94:20, 136:19–23.

[18] The parties do not dispute that the Policy provides coverage for functional or structural hail damage, but they dispute whether functional damage occurred.

[19] *See* Doc. 105 at 16 ("Regardless of what terminology Liberty Mutual uses to describe the dents in GPV's roofs, the fact remains that the denting is a Covered Loss under the policy").

[20] Doc. 108 at 33–34.

The interpretation and legal effect of an insurance contract is a matter of law to be determined by the court.[21] "If the facts are admitted, . . . then it is for the court to decide whether they come within the terms of the policy."[22] In construing an insurance policy, a court must consider the instrument as a whole and interpret the policy language in such a way as to give effect to the intent of the parties.[23] "If an insurance policy's language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense."[24] In such a case, there is no need for judicial interpretation or the application of rules of liberal construction.[25] However, if the policy language is ambiguous, it must be construed in favor of the insured.[26] "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[27] "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning."[28] A court should not strain to find ambiguity where none exists.[29]

Here, the parties do not dispute that the hail storm caused indentations of a cosmetic nature on the roofs of the Covered Property. The Court must therefore determine whether, as a

---

[21] *Am. Media, Inc. v. Home Indem. Co.*, 658 P.2d 1015, 1018 (Kan. 1983); *Gerdes v. Amer. Family Mut. Ins. Co.*, 713 F. Supp. 2d 1290, 1295 (D. Kan. 2010) (quoting *Goforth v. Franklin Life Ins. Co.*, 449 P.2d 477 (Kan. 1969)).

[22] *Am. Media*, 658 P.2d at 1018; *Gerdes*, 713 F. Supp. 2d at 1295.

[23] *O'Bryan v. Columbia Ins. Grp.*, 56 P.3d 789, 792 (Kan. 2002) (citing *Farm Bureau Mut. Ins. Co. v. Horinek*, 660 P.2d 1374 (Kan. 1983)); *Magnus, Inc. v. Diamond State Ins. Co.*, 101 F. Supp. 3d 1046, 1054 (D. Kan. 2015) (citing *Brumley v. Lee*, 963 P.2d 1224, 1226 (Kan. 1998)).

[24] *O'Bryan*, 56 P.3d at 792 (citing *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515 (Kan. 1998)); *Magnus*, 101 F. Supp. 3d at 1054.

[25] *Gerdes*, 713 F. Supp. 2d at 1296.

[26] *Magnus*, 101 F. Supp. 3d at 1054 (citing *Brumley*, 963 P.2d at 1226); *O'Bryan*, 56 P.3d at 793 (citing *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992)).

[27] *Gerdes*, 713 F. Supp. 2d at 1296 (quoting *Catholic Diocese*, 840 P.2d at 459).

[28] *Id.*

[29] *Id.*

matter of law, the Policy provides coverage for cosmetic hail indentations on the metal seam roofs. Although the parties focus on different clauses within the Policy, the Court notes that it must "consider the instrument as a whole" to determine the intent of the parties.[30] Here, both the "Insurance Agreement" and "Coverages" sections are relevant to the scope of coverage, and neither can be viewed in isolation.

### 1) "Insuring Agreement" Section

The Court begins by construing the "Insurance Agreement" section, which generally defines the scope of the Policy. Plaintiff argues that the Policy covers hail indentations of any kind based on the language in this section that provides coverage for "direct physical loss or damage." In support of its argument, Plaintiff cites *Advance Cable Co. v. Cincinnati Insurance Co.*,[31] a decision from the Western District of Wisconsin. In that case, Advance Cable sought summary judgment declaring that its insurance policy provided coverage for hail indentations in a metal roof.[32] The policy provided that Cincinnati Insurance would "pay for direct physical 'loss,'" and defined loss as "accidental loss or damage."[33] Advance Cable argued that even if the hail dents constituted only cosmetic damage, such damage was covered by the policy based on the "loss or damage" language.[34] Cincinnati Insurance argued that the denting did not create a "loss or damage" because the denting was not visible from ground level and did not affect the structural integrity or life of the roof.[35]

---

[30] *O'Bryan*, 56 P.3d at 792.

[31] No. 13-cv-229, 2014 WL 975580 (W.D. Wis. June 20, 2014).

[32] *Id.* at *1.

[33] *Id.*

[34] *Id.* at *9.

[35] *Id.*

The court found that even if there had been no quantifiable "loss," the policy expressly contemplated the possibility that there may be "damage."[36] Thus, Advance Cable did not need to demonstrate a financial "loss" to establish coverage for "damage."[37] Further, the court noted that the phrase "physical loss or damage" in insurance contracts is widely considered to encompass any "physical alteration" to a structure.[38] Applying this reasoning, the court held that:

> Here, there can be no meaningful dispute that a physical alteration to the property occurred. Even assuming this alteration is merely cosmetic, as Cincinnati Insurance contends, there are still dents in the roof panels ranging from barely discernible to an inch or so in diameter. That the denting is minor does not alter the fact that it is still a tangible alteration to the roof. The policy does not state that damage must reach some level of severity to trigger the coverage threshold . . . The limitations that Cincinnati Insurance seeks to impose on coverage cannot be found in the Policy's unambiguous language.[39]

Based on these findings, the court granted summary judgment in favor of Advance Cable. On appeal, the Seventh Circuit affirmed the court's ruling, noting that "[t]here is no exception to the definition of 'loss' for cosmetic damage or any other kind of particular damage."[40]

Plaintiff argues that the *Advance Cable* case demonstrates that "physical loss or damage" language in an insurance policy unambiguously applies to cosmetic hail dents. Defendant attempts to distinguish *Advance Cable* based on the different policy language in that case. In *Advance Cable*, the policy expressly defined "direct physical 'loss'" as "accidental loss or damage."[41] Here, the policy does not define "loss" as "loss or damage," and the word "damage" is not included at all in the "Coverages" section. Defendant argues that because of these distinctions, the interpretation of "loss or damage" in *Advance Cable* does not apply to this case.

---

[36] *Id.* at 10.

[37] *Id.*

[38] *Id.* at *11 (quoting 10A *Couch on Insurance* § 148:46 (3d ed. 2013)).

[39] *Id.*

[40] *Advance Cable Co. v. Cincinnati Ins. Co.*, 788 F.3d 743, 747–48 (7th Cir. 2015).

[41] *Advance Cable*, 2014 WL 975580 at *1.

9

Based on a plain reading of the phrase "physical loss or damage," the Court finds that the "Insuring Agreement" section of the Policy unambiguously provides coverage for hail dents on a metal seam roof. Here, the "Insuring Agreement" section states that Defendant will pay for risks of "physical loss or damage." The court in *Advance Cable* held that this precise language provided coverage for cosmetic hail dents in an insured's metal roofs.[42] The distinction that Defendant draws between the language of this Policy and that in *Advance Cable* does not require the Court to ignore the interpretation of the phrase "loss or damage" in that case.[43] Looking beyond *Advance Cable*, the phrase "physical damage" in an insurance policy is widely accepted to mean a "physical alteration."[44] Thus, the Court finds that the phrase "physical loss or damage" provides coverage where, as here, cosmetic hail dents physically alter an insured's property.

Defendant cites several cases for the proposition that "physical loss or damage" requires a showing of a measurable reduction in the property's usefulness or a change to an unsatisfactory state. These cases, however, do not apply directly to the interpretation of the phrase "physical loss or damage" in this Policy.[45] Against the backdrop of *Advance Cable* and other persuasive

---

[42] *Id.* at *7–11; *Advance Cable*, 788 F.3d at 747–48.

[43] As Defendant notes, unlike in *Advance Cable*, the word "loss" is not defined in this Policy as "physical loss or damage." However, this does not change the fact that the phrase "physical loss or damage" is relevant to the scope of coverage issue here. Therefore, the Court will consider persuasive authority such as *Advance Cable* that bears directly on the meaning of "physical loss or damage."

[44] *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.,* 311 F.3d 226, 235 (3d Cir. 2002) (citing 10 *Couch on Insurance* § 148:46 (3d ed. 1998) ("In ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure."); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 574 (6th Cir. 2012) (same).

[45] *See Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 270–72 (5th Cir. 1990) (holding that "physical loss or damage" clause in insurance policy did not provide coverage for defective design or "faulty initial construction"); *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319–20 (Ga. Ct. App. 2003) (ruling that "direct physical loss or damage" clause did not provide coverage for routine maintenance and upgrades to insured's computer systems); *Ports of Ind. v. Lexington Ins. Co.*, No. 1:09-cv-0854, 2011 WL 5523419, at *10 (S.D. Ind. Nov. 14, 2011) (holding that "direct physical loss or damage" clause required plaintiff to demonstrate reduction in property's usefulness or its ability to safely serve its purpose, where plaintiff alleged structural damage and cosmetic damage was "not at issue"); *Mohr v. Am. Auto. Ins. Co.*, No. 01 C 3229, 2004 WL 533475 (N.D. Ill. Mar. 5, 2004)

authority that suggests that "physical loss or damage" includes cosmetic hail damage that physically alters an insured's property, the Court is not convinced that the cases offered by Defendant define the phrase to mean functional damage. At best, Defendant's authority provides a competing interpretation for "physical loss or damage," thereby creating ambiguity as to whether this phrase encompasses cosmetic damage. Such an ambiguity would result in the Court interpreting the phrase in Plaintiff's favor to include cosmetic damage. However, the Court has found above that based on a plain and ordinary reading of the "Insuring Agreement" section, the phrase "physical loss or damage" unambiguously includes the cosmetic hail damage to Plaintiff's Covered Property.

### 2) "Coverages" Section

The Court next turns to the "Coverages" section of the Policy. Defendant argues that because Plaintiff's claim involves real property, the scope of coverage under the Policy is defined not by the "Insuring Agreement" section, but by the "Coverages" section. This section states that "[i]f coverage for **real property** is provided . . . we will pay for **a covered loss** to your **real property** at or within one-thousand (1,000) feet of **a covered location**." Defendant points to the definition of "**covered loss**" in the Policy as "a loss to **covered property** at **a covered location** resulting from **a peril insured against**." Defendant cites several cases and dictionary definitions for the proposition that "a loss" means "an undesirable outcome of a risk" or a "financial detriment."[46] Based on these definitions, Defendant argues, the Policy unambiguously requires a showing of functional damage to establish a loss.

---

(finding that although policy provided coverage for hail indentations on metal roof, policy did not require a full replacement of roof where parties presented no evidence of functional or structural damage).

[46] *See e.g.*, *Kelly v. Farmers Ins. Co.*, 281 F. Supp. 2d 1290, 1298 n.5 (W.D. Okla. 2003) (stating that "loss" is generally understood to mean "financial detriment"); *B.S.C. Holding, Inc. v. Lexington Ins. Co.*, No. 11-CV-2252, 2014 WL 2207966, at *6 (D. Kan. May 28, 2014) (referring to definition of "loss" as an undesirable outcome of a risk or the disappearance or diminution of value)).

Defendant argues that the more specific definition of "covered loss" in the "Coverages" section acts as a limitation on the "physical loss or damage" language in the "Insuring Agreement" section. Defendant invokes the rule of *ejusdem generis*, arguing that under this principle the Policy's more specific provisions in the "Coverages" section control over the more general provisions at the beginning of the Policy in the "Insuring Agreement" section.[47] Defendant confuses the meaning of this maxim. *Ejusdem generis* applies in the context of ambiguous contracts where an enumeration of specific things is followed by a more general word or phrase, and the general word or phrase is held to refer to things of the same kind enumerated.[48] Lack of ambiguity aside, here the general "Insuring Agreement" section is not preceded by a specific enumeration of coverage limitations, as required to trigger the application of *ejusdem generis*. Thus, Defendant's argument must be construed as promoting the phrase "covered loss" as a limitation on the general "Insuring Agreement" clause in the context of real property claims.

According to Defendant, "the Policy language specific to real property, contained within the 'COVERAGES' form of the Policy, controls over any broad and general language of the insuring agreement."[49] As a general rule, limitations, exclusions, and exceptions in insurance policies are construed narrowly, and the insurer assumes the burden to define limitations in clear and specific terms.[50] Failure of an insurer to define limitations unambiguously "will result in

---

[47] Doc. 108 at 27–28.

[48] *State v. Moler*, 2 P.3d 773, 775 (Kan. 2000); Ejusdem Generis, Black's Law Dictionary (10th ed. 2014) ("[f]or example, in the phrase *horses, cattle, sheep, pigs, goats, or any other farm animals*, the general language *or any other farm animals*—despite its seeming breadth—would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens") (emphasis in original).

[49] Doc. 108 at 28.

[50] *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003) (citing *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213 (Kan. 1998)); *Dillon Cos. v. Royal Indem. Co.*, 369 F.Supp. 2d 1277, 1284 (D. Kan. 2005).

strict construction against the insurer."[51] Defendant argues that because courts have defined "a loss" as an "undesirable outcome" or "financial detriment," the phrase requires an actual functional loss to the property.[52] Plaintiff cites authority suggesting that even cosmetic hail dents create an "undesirable outcome" or a "financial detriment."[53] Based on this competing authority, the Court finds that the phrase "covered loss" does not unambiguously limit coverage of real property to functional damage. Thus, the "Insuring Agreement" section, which unambiguously allows for coverage of cosmetic hail damage, is not limited by the "covered loss" language in the "Coverages" section. Accordingly, the Court grants Plaintiff summary judgment on the issue of whether the Policy provides coverage for hail indentations to the metal roofs of the Covered Property.

### B. Attorneys' Fees

Plaintiff also argues that it is entitled to summary judgment on the issue of attorneys' fees under K.S.A. § 40-908. K.S.A. § 40-908 provides:

> That in all actions now pending, or hereafter commenced in which judgment is rendered against any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee. . . *Provided, however,* [t]hat when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed.[54]

Plaintiff contends that it is entitled to attorneys' fees under K.S.A. § 40-908 based on the declaratory judgment from the Court on the issue of coverage. Defendant responds that Plaintiff

---

[51] *Dillon Cos.*, 369 F. Supp. 2d 1277 (citing *Fancher v. Carson-Campbell, Inc.*, 530 P.2d 1225, 1229 (Kan. 1975)).

[52] Doc. 108 at 28.

[53] *See Lead GHR Enters., Inc. v. Am. States Ins. Co.*, No. CIV. 12-5056, 2014 WL 10538028, at *10 (D.S.D. May 15, 2014) ("It seems axiomatic that a dented roof is worth incrementally less than an undented roof.").

[54] K.S.A. § 40-908 (emphasis in original).

has not shown that it is entitled to attorneys' fees under K.S.A. § 40-908 because Defendant made a tender under the Policy in the amount of $611,883.51 before the commencement of the action, and because a declaratory judgment here would not result in any monetary award. Plaintiff counters that Defendant's tender was not effective to trigger the exception under K.S.A. § 40-908 because the payment was meant to compensate for losses under the Policy other than the denting to the metal seam roofs.

Although the tender was not made to compensate for the losses at issue here, the Court finds that Defendant's tender was effective for purposes of K.S.A. § 40-908. The payment was made under the Policy at issue here, and the statute does not state a requirement that the tender be made for the purpose of compensating the specific disputed loss.[55] To demonstrate its entitlement to attorneys' fees, Plaintiff must show that it obtained a judgment in excess of Defendant's tender.[56] The declaratory relief that the Court has granted here on the issue of coverage does not entitle Plaintiff to an award of monetary relief at this point, much less in an amount in excess of Defendant's tender. Therefore, the Court denies Plaintiff summary judgment on the issue of attorneys' fees.[57]

## IV. Conclusion

Based on the unambiguous language in the Policy providing coverage for "physical loss or damage" to the Covered Property, the Court finds that the Policy covers the hail dents to Plaintiff's 5201, 5252, and 5260 buildings. Therefore, the Court grants summary judgment in favor of Plaintiff on this issue. However, because Defendant made a tender to Plaintiff before the commencement of this action, and because Plaintiff has not yet obtained a monetary

---

[55] *See id.*

[56] *Id.*

[57] *See* Fed. R. Civ. P. 54(d)(2)(B) (requiring movant for attorney's fees to "specify the judgment and the statute, rule, or other grounds entitling the movant to the award").

judgment, the Court denies Plaintiff's motion for summary judgment without prejudice on the issue of attorneys' fees.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Summary Judgment (Doc. 104) is **granted** in part and **denied** in part.  The Court grants summary judgment on the issue of coverage and denies summary judgment without prejudice on the issue of attorneys' fees.

**IT IS SO ORDERED.**

Dated: <u>February 11, 2016</u>

<u>S/ Julie A. Robinson</u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE