## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**GREAT PLAINS VENTURES, INC.,**

      **Plaintiff,**

      **v.**                                       **Case No. 14-1136-JAR**

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,**

      **Defendant.**

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Liberty Mutual Fire Insurance Co.'s ("Liberty") Motion for Reconsideration and Revision of the Memorandum and Order on Plaintiff's Motion for Summary Judgment (Doc. 111).  On February 11, 2016, the Court issued a Memorandum and Order (Doc. 110) granting in part and denying in part Plaintiff Great Plains Ventures, Inc.'s ("GPV") Motion for Summary Judgment (Doc. 104).  The Court granted summary judgment on the issue of coverage, and denied summary judgment on the issue of attorneys' fees.  Defendant moves for reconsideration on the issue of coverage.  For the reasons stated in detail below, the Court denies Defendant's motion.

### I.      Legal Standards

D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, while Federal Rules of Civil Procedure 59 and 60 govern motions to reconsider dispositive orders.[1]  Here, the Court's partial grant of summary judgment was a dispositive order, as it was a decision on the

---

[1] D. Kan. Rule 7.3; *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010).

merits that resolved some of Plaintiff's claims in the case.[2]  Therefore, the court considers

Defendant's motion to reconsider under Fed. R. Civ. P. 59(e).  Under Rule 59(e), grounds

warranting a motion to reconsider include: (1) an intervening change in controlling law; (2) the

availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice.[3]

"Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts,

a party's position, or the controlling law."[4]  Such a motion does not permit a losing party to

rehash arguments previously addressed or to present new legal theories or facts that could have

been raised earlier.[5]  A party's failure to present its strongest case in the first instance does not

entitle it to a second chance in the form of a motion to reconsider.[6]  Whether to grant a motion to

reconsider is left to the Court's discretion.[7]

## II.    Discussion

The Court set forth the uncontroverted facts in ruling on the motion for summary

judgment, and the Court incorporates that recitation by reference.[8]  Defendant moves for

reconsideration on the basis that the Court committed clear error in granting summary judgment

---

[2] *See Phelps v. Hamilton*, 122 F.3d 1309, 1323–24 (10th Cir. 1997) ("we have held that a motion will be considered under Rule 59(e) 'when it involves reconsideration of matters properly encompassed in a decision on the merits.'") (quoting *Martinez v. Sullivan*, 874 F.2d 751, 753 (10th Cir. 1989)); *see also Johnson v. Simonton Bldg. Props., Inc.*, 2009 WL 902409, at *2 (D. Kan. Mar. 31, 2009) (finding that order of partial dismissal was dispositive because it terminated some of plaintiffs' claims).

[3] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).

[4] *Id.*

[5] *Steele v. Young,* 11 F.3d 1518, 1520 n.1 (10th Cir.1993); *see also* Charles Alan Wright, et al., Federal Practice & Procedure: Civil 2d § 2810.1 ("The Rule 59(e) motion may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

[6] *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059-KHV, 2013 WL 139750, at *1–2 (D. Kan. Jan. 10, 2013) (citing *Cline v. S. Star Cent. Gas Pipeline, Inc.*, 370 F. Supp. 2d 1130, 1132 (D. Kan. 2005), *aff'd*, 191 F. App'x 822 (10th Cir. 2006)).

[7] *Coffeyville*, 748 F. Supp. 2d at 1264 (citing *In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010)).

[8] *See* Doc. 110 at 2–6.

to Plaintiff on the issue of coverage.  Defendant asserts several errors that it believes the Court made in its ruling, which resulted in manifest injustice to Defendant.  The Court finds that Defendant's motion is without merit.  Several of Defendant's assertions simply rehash the arguments and allegations that it presented at summary judgment.  The additional arguments and authorities do not provide a basis for reconsideration of the Court's previous ruling.  The Court addresses each of Defendant's assertions in turn below.

**a.      Declarations Section**

In its previous ruling, the Court found that the "Insuring Agreement" provision under the "DECLARATIONS" Section of the Policy, which states in part that "we will pay for risks of direct physical loss or damage to **covered property**," unambiguously provided coverage for cosmetic hail dents to Plaintiff's metal seam roofs.[9]  This finding was based on the application of pertinent rules of contract interpretation in the context of insurance agreements, including that courts must consider the instrument as a whole, interpret the policy language in such a way as to give effect to the intent of the parties, and take clear and unambiguous language in its plain, ordinary, and popular sense.[10]  Based on these principles, the Court found that the Policy provided coverage for cosmetic hail damage.

Defendant argues that in making its finding, the Court improperly assigned "special meaning" to the phrase "physical loss or damage" within the Insuring Agreement provision. Defendant points the Court to a provision in the Policy that states that "[w]ords in **bold faced type** have special meanings in this policy.  They are defined in DEFINITIONS, Form RM1007. These definitions apply to this entire policy, and to any endorsements to it."   Defendant contends that "[t]he phrase 'direct physical loss or damage' is not in bold, and therefore, has no

---

[9] *Id.* at 8–11.

[10] *See id.* at 7.

3

'special meaning' in the context of this insurance contract."[11]  Defendant asserts that, by

contrast, the phrase "**covered loss**," which appears in bold in the "COVERAGES" Section of the

Policy, has "special meaning" and thus controls as to the scope of coverage.[12]

Despite the fact that the phrase "physical loss or damage" is not in bold, the Court again

finds that this phrase within the Insuring Agreement provision has meaning in relation to the

scope of coverage of the Policy.  Although the term "physical loss or damage" does not have

"special meaning" according to the terms of the policy, this does not mean that the phrase is

entirely devoid of meaning.[13]  Indeed, Defendant devotes significant portions of its briefs to the

importance of the word "loss," which does not appear in bold in the Policy.  Thus, the Court

reiterates its finding that based on a plain and ordinary reading of the contract as a whole, the

Policy provides coverage for "physical loss or damage."

**b.      Coverages Section**

Echoing its argument at summary judgment, Defendant argues here that the

"COVERAGES" Section, which provides in part that "we will pay for a **covered loss** to **your**

**real property**," controls over the more general Insuring Agreement provision.  Defendant again

invokes the rule of *ejusdem generis*, arguing that general provisions must be interpreted in light

of more specific provisions in a contract.  Defendant cites *Smith v. Russ*,[14] in which the Supreme

Court of Kansas explained that "where there is an uncertainty between general provisions and

specific provisions, the specific provisions ordinarily qualify the meaning of the general

---

[11] Doc. 111 at 5.  Defendant further states that "the 'direct physical loss or damage' phrase means nothing to the grant of coverage." *Id.*

[12] The Court addresses the impact of the "COVERAGES" Section in Section II.b., *infra*.

[13] The phrase "special meanings" appears to simply suggest that terms in bold are further defined in the policy, rather than suggesting that these words have "greater meaning."  This is consistent with the sentence that follows the "special meanings" phrase, which explains where to find the definitions for bolded words.  *See* Doc. 105, Ex. A at 12.

[14] 339 P.2d 286 (Kan. 1959).

provisions."[15]  Defendant also cites *Jones v. KP&H LLC*,[16] a Tenth Circuit decision in which the court interpreted two competing venue provisions in a real estate contract.  Citing *Smith*, the court in *Jones* explained that "under the rule of *ejusdem generis*, we must interpret general provisions in light of more specific provisions in a contract."[17]  Applying this rule, the court held that the more general provision regarding disputes "arising out of or relating to the purchase and sale of Property" must refer to disputes other than those enumerated in the more specific provision.[18]  Finally, Defendant cites *Exchange State Bank v. Kansas Bankers Surety Co.*,[19] in which the Kansas Court of Appeals explained that "[s]pecific provisions in a contract control over general ones . . . and genuine ambiguities in an insurance contract are resolved against the insurance company."[20]  Based on these cases, Defendant argues that *ejusdem generis* applies in this case, and thus the more specific COVERAGES Section governs the scope of the Policy.  By not applying this rule, Defendant asserts that the Court disregarded Kansas law pertaining to contract interpretation, thereby committing clear error.

The Court finds that it properly interpreted the Policy to include coverage for cosmetic hail damage.  The *Jones* case applied *ejusdem generis* in the traditional context of a contract that contained an enumeration of specific things followed by a provision that related more generally to "the purchase and sale of the property."[21]  *Smith* does not refer specifically to *ejusdem generis*, but states the general rule that "where there is an uncertainty between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general

---

[15] *Id.* at 291.

[16] 288 F. App'x 464 (10th Cir. 2008).

[17] *Id.* at 470 (citing *Smith*, 339 P.2d at 291).

[18] *Id.*

[19] 177 P.3d 1284 (Kan. Ct. App. 2008).

[20] *Id.* at 1285.

[21] *Id.*

provisions."[22]   However, as *Smith* and other Kansas courts have explained, this rule applies only in the context of uncertain or ambiguous contracts.[23]   Here, the Court has found that the Policy unambiguously provides coverage for cosmetic hail damage.   Thus, the rule stated above does not apply to this case.   Even assuming that uncertainty or ambiguity existed regarding the relationship between the DECLARATIONS and COVERAGES Sections, such an ambiguity would be construed in favor of the insured, thereby resulting in the Court construing the Policy to provide coverage for "physical loss or damage."[24]

Defendant further contends that the Court committed clear error in finding that the word "loss" within the COVERAGES Section was ambiguous.   In its summary judgment ruling, the Court held that the Policy unambiguously provided coverage for "physical loss or damage" based on the Policy's DECLARATIONS Section.   However, the Court also considered the meaning of the phrase "covered loss" in the COVERAGES Section in considering the Policy as a whole.   The Court ultimately found that the word "loss" did not unambiguously limit coverage to functional losses.[25]   In so holding, the Court considered definitions for the term "loss," including "undesirable outcome" and "financial detriment."[26]   The Court also considered *Lead GHR Enterprises, Inc. v. Amercian States Insurance Co.*,[27] a District of South Dakota case cited by Plaintiff in which the court considered aesthetic damage to a roof and explained that "it seems

---

[22] *Smith*, 339 P.2d at 291.

[23] *Id.*; *Desbien v. Penokee Farmers Union Co-op Ass'n.*, 552 P.2d 917, 923 (Kan. 1976) ("In ambiguous contracts where there is uncertainty between the general and the specific provisions relating to the same thing, the specific provisions ordinarily qualify the meaning of the general provisions").

[24] *Catholic Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992) ("Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail."); *Western Cas. & Sur. Co. v. Budig*, 516 P.2d 939, 941 (Kan. 1973) ("in the event of ambiguity or conflict in the policy provisions a policy of insurance is to be construed strictly against the insurer and in favor of the insured").

[25] Doc. 110 at 11–13.

[26] *Id.*

[27] No. CIV. 12-5056, 2014 WL 10538028 (D.S.D. May 15, 2014).

axiomatic that a dented roof is worth incrementally less than an undented roof."[28]   Defendant

argues that the Court committed error by considering *Lead GHR*, because that case was not

concerned with defining the term "loss."  Thus, Defendant argues, the Court manufactured

ambiguity concerning the phrase "covered loss."

The Court relied on *Lead GHR* for the notion that even cosmetic hail dents result in a

"financial detriment."  Although *Lead GHR* did not address the term "loss" directly, the Court

suggested that even aesthetic damage results in a reduction in value, or "financial detriment,"

which is one of the definitions Defendant offers for the term "loss."[29]   Based on this authority,

the Court found that the term "loss" did not unambiguously limit coverage under the Policy to

functional loss.  Beyond *Lead GHR*, the parties submitted authority that the term "loss" has the

following meanings: (1) a diminution in value or financial detriment;[30] (2) "an undesirable

outcome of a risk";[31] and (3) "an actual change in insured property then in a satisfactory state,

occasioned by accident or other fortuitous event directly upon the property causing it to become

unsatisfactory for future use or requiring that repairs be made to make it so."[32]   These definitions

could conceivably include cosmetic damage as a "loss."  Where the Policy unambiguously

provided for coverage of cosmetic hail damage under the DECLARATIONS Section, the

Defendant assumed the burden to define limitations to such coverage clearly and explicitly.[33]   As

---

[28] *Id.* at *10.

[29] See *id.*

[30] Black's Law Dictionary 1029–30 (9th ed. 2009); *Kelly v. Farmers Ins. Co.,* 281 F. Supp. 2d 1290, 1298 n.5 (W.D. Okla. 2003).

[31] *B.S.C. Holding, Inc. v. Lexington Ins. Co.*, 2014 WL 2207966, at *6 (D. Kan. May 28, 2014).

[32] *AFLAC Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003); *see Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (quoting *MRI Healthcare Ctr. Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (Cal. Ct. App. 2010)).

[33] See *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003) (citing *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213 (Kan. 1998)); *Dillon Cos. v. Royal Indem. Co.*, 369 F. Supp. 2d 1277, 1284 (D. Kan. 2005).

the Court previously found, the term "loss" did not clearly and explicitly limit coverage to functional loss.  However, even if the term "loss" in the COVERAGES Section unambiguously limited coverage to functional losses, the conflict between the DECLARATIONS and COVERAGES sections would necessarily be resolved in favor of Plaintiff.[34]  Therefore, the Court finds that it did not commit clear error in finding that the Policy provided coverage for cosmetic hail dents, and that the phrase "covered loss" did not unambiguously limit coverage to functional loss.

Defendant also argues that the Court misapprehended its position regarding the requirement of "loss" under the Policy.  In its summary judgment ruling, the Court stated that Defendant's position was that to establish a "loss" under the Policy, Plaintiff was required to demonstrate functional damage to the covered property.  Defendant contends that it "has never taken the position that 'loss' can only exist in the context of 'functional damage,'" and that its position has always been that "'loss' exists when there is a measurable reduction in function or value."[35]  However, in its summary judgment response, Defendant asserted that "[i]f there is *functional damage* to the roof panels . . . then there is an actual loss sustained because the roofs have become unsatisfactory for future use requiring that repairs be made."[36]  Although Defendant referred to "loss" as a measurable reduction in function or value, Defendant also referred to "loss" as requiring "functional damage."  Thus, the Court finds that it did not misapprehend Defendant's position concerning the meaning of the term "loss."

---

[34] *Catholic Diocese*, 840 P.2d at 459; *Western Cas.*, 516 P.2d at 941.

[35] Doc. 111 at 10.

[36] Doc. 108 at 26 (emphasis added).

### c.      Burden of Proof

Finally, Defendant argues that the Court improperly transferred the burden of proof to Liberty.  Defendant asserts that Plaintiff had the initial burden to prove that its claim fell within the scope of coverage under the Policy, and that the Court did not hold Plaintiff to this burden. Although the Court did not state explicitly in its previous ruling that Plaintiff had the burden to prove that its claim fell within the scope of the Policy, the Court did explain that Plaintiff had the initial burden at summary judgment to prove the essential elements of its claim.[37]  This burden included proving that the Policy provided coverage for the cosmetic hail dents at issue.  The Court held that Plaintiff met this burden by establishing that the Policy unambiguously provided coverage for cosmetic hail dents.  Defendant argues that the Court improperly shifted the burden of proof to Liberty, but does not assert how the Court did so.  In its summary judgment ruling, the Court explained that an insurer assumes the burden to define limitations in clear and specific terms.[38]  This rule of law, however, does not transfer the burden of proof to Defendant.  Rather, it simply transfers the responsibility to the insurer to define limitations in clear terms once the insured has met its burden of establishing that the policy provides coverage for its claim.[39]  Thus, the Court finds that it did not improperly transfer the burden of proof to Defendant.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Reconsideration (Doc. 111) is **denied**.

**IT IS SO ORDERED.**

Dated: <u>April 29, 2016</u>

---

[37] Doc. 110 at 2.

[38] *Id.* at 12.

[39] *See Baugher v. Hartford Fire Ins. Co.*, 522 P.2d 401, 900–01(Kan. 1974) (explaining that insured has burden of proving that loss was of type included in general coverage provisions of policy, while insurer bears burden to prove facts which bring case within specified exceptions); *see also Marshall*, 73 P.3d at 130 (citing *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213 (Kan. 1998)).

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE